## NORTH AMERICAN CO. v. ST. LOUIS & S. F. R. CO.

District Court, E. D. Missouri, E. D.   May 27, 1926.

No. 4174.

See, also, 28 F.(2d) 176; 271 U. S. 445, 46 S. Ct. 549, 70 L. Ed. 1028.

Thomas Bond, of St. Louis, Mo., for plaintiff.

H. S. Priest, of St. Louis, Mo., for defendant.

White & Case, of New York City, and Nagel & Kirby and George T. Williams, all of St. Louis, Mo., for complainants Bankers' Trust Co. and Neill A. McMillan, as trustees.

Batson & Richards, of Kansas City, Mo., for J. M. Haigler and others.

J. D. Johnson and Loomis Johnson, both of St. Louis, Mo., for Louis Hauck and others and Mississippi Valley Trust Co.

Lon O. Hocker, of St. Louis, Mo., for Peabody Coal Co.

C. B. Allen, of St. Louis, Mo., for M. E. Ashgrove and others.

S. W. Fordyce, Jr., John H. Holliday, and Thos. W. White, all of St. Louis, Mo., for National Surety Co.

J. D. Harrison, administrator of the estate of St. Ennix, deceased.

Stetson, Jennings & Russell, of New York City, and Franklin Ferriss, of St. Louis, Mo., for Guaranty Trust Co. of New York.

WALTER H. SANBORN, Circuit Judge. The only real issue presented in the consideration of the motion to confirm this sale is whether or not the reorganization committee have presented a fair and timely offer of payment, or a fair and timely offer of participation in the reorganized company, through stocks, bonds, or otherwise, as required by the eighteenth paragraph of the decree. In the consideration of that question the court cannot divest itself of experience, nor of its knowledge of the course of proceedings in the receivership, and the relations of the lienholders, creditors, and stockholders, and the respective interests they hold. The court cannot divest itself of knowledge of the operation of the railroad company, the income derived from the operation of the railroad, the amounts required during the three years when it has been in the hands of the court to pay the necessary expenses of operation, and the amounts that would have been required to pay the interest upon the lien secured upon the property; nor can it divest itself of the knowledge which comes from an acquaintance with the earnings of the property while it has been operated as carefully as the receivers were able to operate it, and as economically as they know how to handle it.

Looking back over the history of the receivership, it is certain that during the three years it has been operated by the receivers it has not earned enough to pay necessary expenses of operation and the amounts that would have been required to pay interest on its liens, if those amounts had been paid; and that knowledge stands against the estimates which have been presented now as to the value of this property

when the time came to foreclose the mortgage and render the decree. The court will not undertake to review the various arguments which have been made, or to state the terms of the offer, for you have all heard that and know it. The objections that are made to the offer are, briefly, these: That commissions to the amount of $5,000,000 have been provided for in the reorganization plan, which ought not to have been paid. Conceding that that may be so, it is not of sufficient importance in the mind of the court to determine the question whether a fair and timely offer has been made to the creditors, that all the other considerations are given their proper weight.

■ It is said that the offer is not an offer; that it is conditional, because there is a provision in it that disputed claims may be litigated. But it would not be just or righteous to require reorganization committees to pay claims that were uncertain in amount, or uncertain as to the rights upon which they are founded, and the court is of the opinion that that provision will not be applied to claims that are just, or to claims whose amounts are determined, but the purpose of it was to give an opportunity to litigate those about which there was a real question of law or fact, and so far as these were concerned it was not an unreasonable provision. Now, it is said that the value of this property was $321,000,000 and that, after everybody was provided for who had liens on or claims against this company, down to the general creditors, there was an equity of $91,000,000 left, and that the equity ought to be applied to the payment of creditors before the stockholders should receive anything. That is an estimate, but the court is clearly of the opinion that, if the lienholders who foreclosed their mortgage upon this property had proceeded to a sale of the property under the rights, no one could have been found who would have paid enough to satisfy the bonded liens, and there would have been nothing left for either creditors or stockholders. It was, in the opinion of the court, only by virtue of this reorganization scheme, whereby the stockholders would take hold and assist to reorganize the company, and to take these new securities, or a portion of them, that anything whatever could have been saved for the common creditors. They never could have bought this property, they never could have reorganized this company, they never could have purchased this property, so as to give to themselves anything above the amount required to pay the bonded debt. So that this estimate of $321,000,- 000 and this equity of $90,000,000 or $91,- 000,000 when it comes to an actual foreclosure of the mortgage and the handling of a big property like this, is more imaginary than real.

■ It is said that larger payments have been made to some creditors than to others. It is difficult to perceive how that fact can determine the question whether or not this is a fair and timely offer. There is no objection that the court can perceive to a reorganization committee, or any one else, purchasing claims against an insolvent railroad company, for any price it sees fit to give, and paying some percentage to one creditor, and a larger or less percentage to another, and it seems to the court that the fact that the banks have been paid a larger percentage than others does not determine the question whether or not these protestants have received a fair and timely offer in settlement of their claims.

■ Now, inasmuch as the court is of the opinion and thinks that there is no doubt that these creditors would have received nothing whatever out of the foreclosure of this property, unless the reorganization committee had evolved a scheme or plan whereby this property could be distributed among stockholders and creditors, and would have lost everything, and inasmuch as, under this offer, each creditor is given a larger percentage of his claim in actual value than any stockholder received, the offer cannot be said to be unfair or untimely. It is an advantage to the creditor to have such a plan or scheme, an advantage from which they derive about 25 per cent. of their claims, where, if there had been no such plan or scheme, they would have received nothing.

For these reasons, the court thinks the objections must be overruled, and that the sale must be confirmed, and the order confirming the sale will be signed.